1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID DUTRA,                                        No. C 06-07196 MHP

          Petitioner,

   v.                                        **MEMORANDUM & ORDER**

BEN CURRY, Warden,                          **Re: Petition for Writ of Habeas Corpus**

          Respondent.

_____/

     Petitioner David Dutra, a California prisoner now incarcerated at the Correctional Training Facility in Soledad, filed this petition for writ of habeas corpus under 28 U.S.C. section 2254 to challenge the Board of Parole Hearings' ("the Board") 2004 decision denying him parole. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons set forth below, the petition is denied.

BACKGROUND

     On December 6, 1983 Dutra beat and strangled his wife to death in their home. Pet. Exh. A at 14-19. The two were wrapping Christmas gifts in their living room when they began to argue. Id. The fight grew heated and Dutra knocked his wife to the ground, causing her to hit her head on a tape dispenser. Id. He then left the living room, went to his bedroom and laid on his bed. Id. After about ten minutes, he returned to the living room, picked up a two-by-two piece of wood, and used it to beat his wife's head and body, causing her severe head injuries. Id. He then left the room a second time, but after several minutes returned and used the two-by-two piece of wood to strangle

his wife to death.  Id.  On March 25, 1985 Dutra pled guilty to second degree murder in violation of California Penal Code ("CPC") section 187.  Pet. Exh. B at 259.

During his time in prison Dutra has made significant progress towards rehabilitating himself. He has participated in several self-help and therapy programs, see Pet. Ex. A at 34, 62-65, and participated and worked as a teaching assistant in vocational programs, see Pet. Ex. B at 95, 98, 112. Moreover, his 1999 and 2004 mental health evaluations indicate that he has made substantial progress in taking responsibility for his crime and likely would not pose a high risk of danger to the public.  See Pet. Ex. B at 141-146; Ex. C at 271-273.

Although Dutra has had an outstanding disciplinary record through most of his incarceration[1], he was convicted of a disciplinary violation in 2002 for attempting to undermine the Catholic Chapel Program ("CCP") at his prison.  Pet. Ex. V at 455-56.  Dutra had volunteered in the CCP for several years before a new priest, Father Stevenson, was hired as its chaplain.  Id.  After his arrival, Father Stevenson restricted some of the substantial liberties Dutra and other volunteers had enjoyed while volunteering under the previous chaplain.  Id.  In response, Dutra and four other inmates conspired to undermine the CCP by encouraging others not to join and making threatening statements against Father Stevenson.  Id.  In March 2002 Dutra was convicted of conspiring with others to undermine the CCP.  Id.

On August 31, 2004, the Board declined to grant Dutra a parole release date.  Pet. Exh. A at 81-86.  At that time, Dutra had served 19 years of his 15-to-life sentence.  It was the sixth time Dutra had been denied parole.  See Pet. at 7-11.  In the hearing, the Board commended Dutra for developing marketable skills, maintaining a positive relationship with his family, remaining discipline free for the preceding two years, and participating in a variety of programs while incarcerated.  Id.  Nevertheless, the Board denied Dutra parole, finding that he would pose an unreasonable risk of danger to society if released from prison.  Id.  The Board based its decision on the nature of the commitment offense and Dutra's lack of insight into the offense.  Id.  As to the nature of the offense, the Board noted that Dutra abused the victim before actually killing her by knocking her to the ground and beating her with a two-by-two piece of wood.  Id.  It further cited that "[t]he motive of the crime was inexplicable in relationship to the offense" because Dutra

murdered his wife for reasons "that had to do with what happened to [him] when [he was] growing up." Id. at 81. As to Dutra's insight, the Board determined that Dutra's psychological report was "not totally supportive" and that he had "failed to develop sufficient insight into the offense." Id. at 83. On these grounds, the Board denied Dutra parole for a period of two years and counseled him to remain discipline free and continue with his programming with an aim towards gaining insight into his commission of the offense. Id. at 85.

Dutra sought relief of the Board's denial of parole in the California courts. The Superior Court denied his petition for writ of habeas corpus on September 21, 2005 in a reasoned order. Ans. Exh. 5. The California Court of Appeal summarily denied his petition for writ of habeas corpus and the California Supreme Court summarily denied his petition for review. Ans. Exh. 6 & 7. Dutra then filed this federal petition for writ of habeas corpus. Respondent answered and petitioner filed a traverse. The matter is now ready for a decision on the merits.

JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. section 2254. 28 U.S.C. § 1331. This action is in the proper venue because Dutra is incarcerated in the Correctional Training Facility in Soledad, in the Northern District of California. See 28 U.S.C. § 2241(d).

EXHAUSTION

Prisoners in state custody challenging collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in this petition.

United States District Court
For the Northern District of California

3

United States District Court
For the Northern District of California

1  LEGAL STANDARD

2      The court is required to analyze state habeas corpus claims under the Antiterrorism and

3  Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254.  Under AEDPA, the court may

4  entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the

5  judgment of a State court only on the ground that he is in custody in violation of the Constitution or

6  laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with

7  respect to any claim that was adjudicated on the merits in state court unless the state court's

8  adjudication of the claim resulted in a decision that was:  (1) "contrary to, or involved an

9  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

10  the United States;" or (2) "based on an unreasonable determination of the facts in light of the

11  evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Section 2254(d) applies to

12  a state prisoner's habeas petition challenging the denial of parole.  See Sass v. California Board of

13  Prison Terms, 461 F.3d 1123, 1126– 27 (9th Cir. 2006).

14      Here, the Superior Court issued the last reasoned state court opinion. Thus, this court will

15  review the Superior Court opinion under the AEDPA standards.  See Ylst v. Nunnemaker, 501 U.S.

16  797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005), cert. denied, 126

17  S. Ct. 2041 (2006).

18

19  DISCUSSION

20      Dutra makes four primary arguments in his petition.  First, he argues that the Superior

21  Court's application of the "some evidence" standard to the Board's decision was contrary to clearly

22  established federal law and was not supported by evidence in the record.  Second, he argues that the

23  Superior Court relied on unconstitutionally vague criteria in upholding the Board's unsuitability

24  determination.  Third, he argues that the Board's decision violated his due process rights by using

25  unproven fact findings to extend his sentence beyond the statutory maximum.  Fourth, he argues that

26  the Board's decision violated the terms of his plea agreement.  These four arguments will be

27  considered in succession.

28

**United States District Court**
For the Northern District of California

I.      <u>The Some Evidence Standard</u>

"California Penal Code section 3041 vests . . . California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the due process clause." <u>Irons v. Carey</u>, 505 F.3d 846, 850 (9th Cir. 2007).  "[A] parole board's decision deprives the prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" <u>Id.</u> at 851 (quoting <u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985); <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006).

In assessing whether the Board's denial of parole was supported by "some evidence," the "analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." <u>Irons</u>, 505 F.3d at 851.  Under CPC section 3041, parole applicants "have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 654 (Cal. 2002), <u>cert. denied</u>, 538 U.S. 980 (2003). California Code of Regulations ("CCR") section 2402(c), an implementing regulation of CPC section 3041, lists factors that, if applicable to the prisoner, tend to indicate unsuitability for release. 15 Cal. Code Regs. § 2402(c).  One factor indicating unsuitability is where the prisoner's commitment offense was committed "in an especially heinous, atrocious or cruel manner." <u>Id.</u>  The regulation then lists several criteria that guide the Board in determining whether an offense was "especially heinous, atrocious, or cruel." <u>Id.</u> at § 2402(c)(1).  The criteria include, *inter alia*, the offense was carried out in a dispassionate and calculated manner; the victim was abused during the offense; the offense was carried out in a manner that demonstrates exceptionally callous disregard for human suffering; or the prisoner's motive for the crime is inexplicable in relation to the offense. <u>See id.</u> at §§ (c)(1)(B)–(c)(1)(E).  CCR section 2402 also lists several suitability criteria which guide the Board in determining whether an inmate is suitable for release.  <u>See</u> § 2402(d).

"Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made clear that the findings that are necessary to deem a prisoner unsuitable for parole . . . are not that a particular factor or factors

5

1   indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety."

2   Hayward v. Marshall, 512 F.3d 536, 543 (9th Cir. 2008) (internal citations and quotations omitted).

3          Here, the Board found Dutra unsuitable for parole based on the nature of his commitment

4   offense and his alleged lack of insight into his offense.  Specifically, it concluded that (1) Dutra

5   carried out the offense in an "especially cruel, callous, and dispassionate manner," (2) Dutra abused

6   the victim while committing the offense, (3) Dutra's motive was not a reasonable explanation for

7   committing the offense, and (4) Dutra needed to develop further insight into his offense.  Pet. Exh. A

8   at 14-19.  In reviewing the Board's decision, the Superior Court applied the some evidence standard

9   and found evidence supporting the Board's findings as to Dutra's abuse of the victim, his motive,

10  and insight.  Ans. Exh. 5 at 3-4.  The Superior Court did not discuss whether there was some

11  evidence to support the Board's conclusion that the commitment offense was carried out in an

12  "especially cruel, callous, and dispassionate manner."  See id.

13         Dutra contends that the Superior Court's decision was contrary to clearly established federal

14  law and objectively unreasonable.  He argues that clearly established federal law required the

15  Superior Court to apply a more stringent "substantial evidence" standard.  He further argues that

16  even if the Superior Court was correct in applying the some evidence standard, its application of the

17  standard was objectively unreasonable because the Board's unsuitability determination was not

18  supported by any evidence in the record.  The court now considers these two arguments in turn.

19         A.     Contrary to Federal Law

20         Dutra alleges that the Superior Court's decision was contrary to clearly established federal

21  law because it applied the some evidence standard instead of the less deferential "substantial

22  evidence" standard.  The implication of Dutra's argument is that the Ninth Circuit has misinterpreted

23  Hill, 472 U.S. at 454-56, as requiring reviewing courts to apply the some evidence standard to the

24  Board's decision to deny parole.  According to Dutra, the some evidence standard set forth in Hill is

25  not applicable here, and a substantial evidence standard should always be applied to the Board's

26  decision to deny parole.  In response, the government argues that clearly established federal law

27  required the Superior Court to ensure only that Dutra received the most minimal due process

28  protections.  According to the government, only Supreme Court decisions are clearly established

United States District Court

For the Northern District of California

6

**United States District Court**
For the Northern District of California

1    federal law under AEDPA, and the only Supreme Court decision that has addressed the standard of

2    review for state parole determinations is <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>,

3    442 US 1 (1979).  The government argues that <u>Greenholtz</u> established that the standard of review for

4    state parole procedures is even more minimal than the some evidence standard, requiring merely that

5    the prisoner be given an opportunity to be heard and an explanation as to why parole was denied.

6    Because the Superior Court applied the some evidence standard, the government argues that Dutra

7    received more due process protections than were actually required.

8          Both parties are wrong.  The Ninth Circuit has repeatedly held that the some evidence

9    standard set forth in <u>Hill</u> applies to review of state parole determinations.  <u>See</u> <u>Hayward</u>, 512 F.3d at

10   542; <u>Irons</u>, 505 F.3d at 851; <u>Sass</u>, 461 F.3d at 1128–29.  Indeed, the Ninth Circuit has explained that

11   "although <u>Hill</u> involved the accumulation of good time credits instead of a parole denial, the some

12   evidence standard applies in both situations because 'both directly affect the duration of the prison

13   term.'" <u>Sass</u>, 461 F.3d at 1129 (quoting <u>Jancsek v. Or. Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.

14   1987)).  The court thus holds that the Superior Court followed clearly established federal law by

15   applying the some evidence standard to the Board's decision to deny Dutra parole.

16         B       <u>Unreasonable Application</u>

17         Dutra argues that the Superior Court's decision involved an unreasonable application of the

18   some evidence standard.  He challenges the Superior Court's decision on two grounds.  First, he

19   argues that there is no evidence in the record supporting the Superior Court's application of

20   unsuitability factors.  Second, he contends that his commitment offense can no longer be used as a

21   reason to find him unsuitable for parole, and because the Superior Court's decision relied primarily

22   on the nature of his commitment offense, it was not supported by some evidence.  The court now

23   considers these two arguments in turn.

24                1.       <u>The Superior Court's Application of Unsuitability Factors</u>

25         In denying Dutra's habeas petition, the Superior Court found some evidence to support the

26   conclusion that the commitment offense was "especially heinous."  Under CPC section 3041, a

27   prisoner may be unsuitable for parole where the offense was committed in an "especially heinous,

28   atrocious, or cruel manner."  As required by CCR section 2402(c)(1), the Superior Court based its

1  decision on specific criteria, citing evidence that Dutra had abused the victim during the offense and

2  that Dutra's motive was inexplicable in relation to the offense.  It also found that Dutra's 2004

3  psychological evaluation supported the Board's conclusion that he needed to develop further insight

4  into his commission of the offense.

5      Dutra contends that the Superior Court's three findings were not supported by some

6  evidence.  After reviewing the record, the court finds that there was some evidence that Dutra

7  abused the victim and that his motive is inexplicable in relation to the offense.  During the

8  commission of the offense, Dutra pushed the victim to the ground, struck her with a two-by-two

9  piece of firewood, and ultimately strangled her to death.  Pet. Exh. A at 81-86.  Dutra apparently

10  beat the victim so badly that she pleaded with him to kill her so she could avoid further suffering.

11  Id.  Reasonable minds may disagree about whether Dutra's actions constituted abuse within the

12  meaning of CCR section 2402(c)(1)(C), but the Superior Court certainly was not objectively

13  unreasonable in its conclusion.  The court may not second-guess the Superior Court's decision

14  unless it is unreasonable to "conclude that the finding is supported by the record."  Taylor v.

15  Maddox, 366 F.3d 992, 1000 (9th Cir. 2004).  Based on Dutra's brutal and prolonged beating of the

16  victim, this court finds it reasonable to conclude that Dutra abused the victim within the meaning of

17  CCR section 2402(c)(1)(C).

18      As to Dutra's motive, there is evidence that Dutra has not adequately explained his reasons

19  for committing the offense.  Under CCR section 2402(c)(1)(E), the Board may consider whether

20  "the motive for the crime is inexplicable or very trivial in relation to the offense."  The Board is not

21  precluded from finding an inmate's motive inexplicable whenever he has a plausible explanation for

22  the offense.  All the statute requires is that the motive for the inmate's crime be confused or trite in

23  comparison to the action taken.  See In re Scott, 119 Cal. App. 4th 871, 893 (2004) (explaining that

24  an inexplicable "motive . . . is one that is unexplained or unintelligible, as where the commitment

25  offense does not appear to be related to the conduct of the victim and has no other discernible

26  purpose").  Here, Dutra acknowledged that he did not kill his wife because of something she had

27  done, but rather because of stress from being molested by two priests.  Because his wife did not

28  provoke the murder, it was not unreasonable to find Dutra's motive inexplicable.  Cf. Scott,

119 Cal. App. at 893 (petitioner's motive was not inexplicable because he killed the victim out of anger and fear after the victim had introduced his wife to drugs, had a sexual relationship with her, and physically threatened him).  Thus, the Superior Court reasonably found some evidence that the commitment offense was "especially heinous."

As to Dutra's insight into the offense, the evidence cited by the Superior Court is not supportive of the Board's finding.  The Board's conclusion that Dutra needed to develop further insight was based on a psychological report prepared by staff psychologist Dr. M.E. Gleason. Pet. Exh. C at 271-73.  According to the Board, because the report stated that Dutra had shown "some insight" into his commitment offense, Dutra needed to develop further insight.  Id.  In reviewing the Board's decision, the Superior Court found that Dr. Gleason's report provided some evidence to support the Board's conclusion.  Ans. Exh. 5 at 3-4.

The court disagrees.  Conspicuously absent from Dr. Gleason's report is any statement suggesting that Dutra needs to develop further insight into his offense.  See Pet. Exh. C at 271-73. To the contrary, the report indicates that Dutra "has spent considerable time and effort understanding not only his commitment offense, but how the offense was able to occur due to his propensity to bottle up emotion, and not process them."  Id.  The report also states that Dutra spent eight and a half years in a lifer's group specifically for men who had killed their wives and that in this group, "many aspects of [his] commitment offense were explored, examined, and understood."  Id.  Dr. Gleason's report also noted that "[s]ince the commitment offense, he has spent time with psychiatrists, counselors, and self-help programs, which would handle any precursors [to violence], and there are no other known issues left to explore in that arena."  Id.  Finally, the report stated that Dutra "would have no higher of a risk of violence than anyone else in the community," that he was "genuinely remorseful for killing his wife," and that he "astutely understands that no matter now much time he serves in prison, he cannot bring the victim back."  Id.  In the context of the entire report, the Superior Court's conclusion that Dutra needed to develop further insight into his commitment offense was not supported by some evidence.

The court thus holds that the Superior Court's application of the some evidence standard was reasonable only with respect to its findings as to Dutra's commitment offense.  The court must now

United States District Court
For the Northern District of California

9

1 | determine if the Superior Court violated Dutra's due process rights by relying solely on the nature of
2 | the commitment offense.

3 | ### 2.   Reliance on the Commitment Offense

4 | Four recent Ninth Circuit cases provide guideposts for applying the some evidence standard
5 | in cases where the Board relies on the commitment offense to deny parole.  In <u>Biggs v. Terhune</u>, 334
6 | F.3d 910, 916 (9th Cir. 2003), the court upheld the initial denial of a prisoner's parole release date
7 | based solely on the nature of his crime and his conduct before incarceration, but cautioned that
8 | "[o]ver time . . . , should [the prisoner] continue to demonstrate exemplary behavior and evidence of
9 | rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior
10 | conduct would raise serious questions involving his liberty interest in parole."  In <u>Sass</u>, 461 F.3d at
11 | 1129, the court again upheld the denial of parole based on the nature of the commitment offense and
12 | clarified that the Board and Superior Court may continue to look at the nature of the commitment
13 | offense as a predictor of suitability for parole.  However, <u>Sass</u> did not dispute the principle that the
14 | weight attributed to such static evidence decreases over time.  The court reaffirmed this principle in
15 | <u>Irons</u>, 505 F.3d at 853-854.  <u>Irons</u> emphasized that "in all the cases in which we have held that a
16 | parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his
17 | commitment offense comports with due process, the decision was made before the inmate had
18 | served the minimum number of years required by his sentence."  <u>Id.</u> at 853.  Although <u>Irons</u> stressed
19 | the importance of the prisoner's rehabilitation, it cautioned that "indefinite detention based solely on
20 | an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point
21 | violate due process, given the liberty interest in parole that flows from the relevant California
22 | statutes."  <u>Id.</u> at 855.

23 | In <u>Hayward</u>, the court applied the standards developed in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>, granting a
24 | habeas petition on the grounds that the petitioner's commitment offense and pre-conviction
25 | misconduct were no longer probative of his suitability for parole.  The court noted that the petitioner
26 | had committed his underlying offense approximately 25 years prior to the Governor's decision; had
27 | served approximately 23 years in prison, well beyond his 15 year minimum term; and had undergone
28 | significant rehabilitation, as evidenced by the fact that he had not had a major disciplinary violation

United States District Court

For the Northern District of California

in approximately 14 years or a minor infraction in approximately six years.  Id.  Based on these considerations, the court held that the petitioner's commitment offense was no longer some evidence that he was unsuitable for parole.

These four cases indicate that three factors are particularly relevant in determining whether the nature of a prisoner's commitment offense can be used as evidence for parole suitability: the period of time since the commitment offense occurred; the time served in prison; and evidence of rehabilitation while incarcerated.

Here, the first two factors favor Dutra.  At the time of his parole denial in 2004, it had been just under 20 years since he committed the offense and he had served 19 years of a 15-years-to-life sentence.  In light of the approximately two decades that had passed since Dutra committed the offense and began serving his sentence, it was objectively unreasonable for the Board to conclude that he was unsuitable for parole based on that factor alone.  Like the petitioner in Hayward, Dutra's commitment offense had become a "stale and static factor" that had "no predictive value regarding his suitability for parole."  Id. at 8.

However, unlike the petitioner in Hayward, there is some evidence that Dutra was unsuitable for parole based on a recent disciplinary violation.  Although Dutra claims that he has undergone an "unprecedented rehabilitation," he received a disciplinary violation in March 2002 for attempting to undermine the CCP at his prison.  As discussed above Dutra and four other inmates became disenchanted when a new chaplain, Father Stevenson, began running the CCP.  They conspired to undermine the CCP by encouraging others not to join and by making threatening statements against Father Stevenson.  This disciplinary violation was discussed in Dutra's 2004 parole proceeding, see Pet. Ex. A at 47-51, but was not expressly cited by the Board or the Superior Court as a reason to find Dutra unsuitable for parole.  Nonetheless, because "[a]ll relevant, reliable information" must be considered in determining parole suitability, see CCR section 2402(b), the court finds that the Board's unsuitability determination was supported by this disciplinary violation.  Accordingly, the Superior Court's decision did not unreasonably apply the some evidence standard.

11

**United States District Court**
For the Northern District of California

III.     Vagueness

Dutra next argues that the Superior Court's decision was based on an unconstitutionally vague parole regulation.  Specifically, Dutra challenges the Superior Court's reliance on CCR section 2402(c)(1), which states that a prisoner may be unsuitable for parole where the underlying offense was committed "in an especially heinous, atrocious, or cruel manner."  According to Dutra, the Superior Court's reliance on this language was contrary to clearly established law because the Supreme Court has held similar statutory and regulatory language to be unconstitutionally vague.  See Godfrey v. Georgia, 446 U.S. 420, 428 (1980) (overturning two death sentences imposed on the grounds that the offenses were "outrageously or wantonly vile, horrible and inhuman"); Maynard v. United States, 486 U.S. 356, 361-64 (1988) (striking down an aggravating circumstance statutory provision that permitted juries to consider whether a murder was "especially heinous, atrocious, or cruel").

Vagueness challenges made under the Due Process Clause "rest on the lack of notice." Maynard, 486 U.S. at 361.  A statute or regulation is unconstitutionally vague "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement."  United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989).  Vagueness challenges to statutes or regulations that do not threaten First Amendment rights are analyzed on an as-applied basis.  See Maynard, 486 U.S. at 361.  Thus, the issue before the court is whether CCR section 2402(c)(1) provided Dutra with adequate notice and the Superior Court with adequate guidance.

This issue was addressed in McCottrell v. Ayers, 2007 WL 4557786, at 9-10 (N.D.Cal.) (Hamilton, J.).  In McCottrell, a California inmate who had been denied parole claimed that CCR section 2281(c)(1), which contains language identical to that in section 2402(c)(1), was unconstitutionally vague.  Id.  Judge Hamilton disagreed, holding that the "heinous, atrocious, and cruel" factor was not unconstitutionally vague because its application was guided by specific criteria set forth in CCR section 2281(c)(1)(A)-(E).  Id.  These criteria are identical to those that guide section 2402(c)(1)(A)-(E), discussed above.  Id.  Judge Hamilton distinguished Maynard on the

12

1   grounds that the statutory provision at issue in that case, unlike section 2281(c)(1), lacked a limiting

2   construction. Id.

3       This court is persuaded by the reasoning in McCottrell. The statutes at issue in Godfrey and

4   Maynard, the two cases Dutra cites in support of his argument, are distinguishable from

5   CCR section 2402(c)(1) as applied in this action. The statutory provisions at issue in Godfrey and

6   Maynard lacked limiting constructions. In Godfrey, a Georgia jury imposed the death penalty solely

7   on the basis that the defendant's offenses were "outrageous, or wantonly vile, horrible or inhuman."

8   446 U.S. at 422. Although the Georgia capital punishment statute specified standards to guide the

9   jury's discretion, the jury failed to consider such standards in imposing the death sentences. Id.

10   at 426. The Godfrey court explained that the statutory language relied on by the jury was

11   unconstitutional because it did not provide specific standards to guide the jury's discretion. Id.

12   at 428. Following Godfrey, the court in Maynard struck down the "especially heinous, atrocious, or

13   cruel" aggravating circumstance provision in Oklahoma's capital punishment statute. 486 U.S.

14   at 364-65. As in Godfrey, the language was unconstitutionally vague because it failed to guide the

15   jury's discretion in determining whether to impose the death penalty. Id.

16       As applied in this action, CCR 2402(c)(1) provided Dutra with adequate notice and the

17   Superior Court with adequate enforcement standards. The Superior Court cited two regulatory

18   criteria for its finding that Dutra's offense was "especially heinous"—abuse of the victim and

19   inexplicable motive. These two regulatory criteria gave Dutra fair warning and guided the Superior

20   Court's decision. The criteria also distinguish this action from Godfrey and Maynard. The court

21   concludes that the Superior Court's application of CCR 2402(c)(1) was not unconstitutionally

22   vague.[2]

23

24   III.   Extension of Sentence beyond the Statutory Maximum

25       Dutra also argues that the Board used unproven fact findings to extend his sentence beyond

26   the statutory maximum in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v.

27   Washington, 542 U.S. 296 (2004). In Apprendi, the Court held that "[o]ther than the fact of a prior

28   conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be

United States District Court
For the Northern District of California

13

1   submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. <u>Blakely</u> applied the

2   <u>Apprendi</u> rule in holding that a state trial judge violated the defendant's Sixth Amendment right to a

3   trial by jury by extending his sentence based on factual determinations that were not submitted to a

4   jury. <u>See</u> 542 U.S. at 305.

5       Dutra argues that the Board, performing a "sentencing function" during his parole review

6   hearings, violated the due process protections provided by the <u>Apprendi</u> rule by making "rulings

7   about the [commitment offense] being 'cruel and callous,' or 'especially heinous, atrocious and

8   cruel,' or 'dispassionate' . . . ." Pet. Mem. at 50. This amounts to a constitutional violation, Dutra

9   argues, because it elevates his crime from second to first degree murder. <u>Id.</u> at 47.

10      Contrary to Dutra's argument, the <u>Apprendi</u> rule does not apply to the circumstances of this

11  case. On its face, a violation of the <u>Apprendi</u> rule requires reliance upon a fact that extends a

12  prisoner's sentence beyond the statutory maximum. Here, Dutra pled guilty to second degree

13  murder, a crime that California has found to be punishable for a term of fifteen-years-to-life. <u>See</u>

14  Cal. Pen. Code § 109(a). Because the maximum sentence for second degree murder is life in prison,

15  it would be impossible for the Board to extend Dutra's sentence beyond that term. Thus, the Board

16  was not performing a sentencing function and the <u>Apprendi</u> rule does not apply. Accordingly,

17  Dutra's argument is without merit.

18

19  IV.    <u>Breach of the Plea Agreement</u>

20      Dutra argues that Board breached the terms of his plea agreement by treating his second

21  degree murder conviction as a crime of greater degree—i.e. first degree. Specifically, Dutra argues

22  that he pled to second degree murder with the understanding that he would serve only ten years in

23  prison. He also claims that he was told he would be released after ten years provided he remained

24  discipline free. Dutra argues that the breach occurred when the Board did not release him after ten

25  years of confinement. In support of this claim, Dutra submitted a declaration to the Superior Court.

26  <u>See</u> Dutra Dec. Exh. H at 1.

27      The government argues that this claim is barred by the statute of limitations. The court

28  agrees. The one year statute of limitations for applying for a writ of habeas corpus runs from the

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    date on which the "factual predicate of the claim . . . presented could have been discovered through

2    reasonable diligence." 28 U.S.C. § 2244(d)(1)(D). Here, the factual predicate for the filing of

3    Dutra's claim was the breach of the alleged agreement. On March 25, 1985 Dutra was convicted of

4    second degree murder. Ans. Exh. 1. At that time, Dutra had been in custody 53 days and

5    accumulated 27 days of good/worktime days, for a total of 80 days served. Assuming he had stayed

6    discipline free, which he did for the most part with the exception of two incidents of minor

7    misconduct in 1989, the state would have breached Dutra's alleged ten year agreement in early

8    1995. Because AEDPA's effective date was April 24, 1996, Dutra had one year in which to file his

9    claim before it was time-barred. See e.g., Evans v. Chavis, 546 U.S. 189, 200 (2006). Although the

10   alleged breach may have occurred as early as January 1996, the statute did not run until Dutra could

11   have discovered it "through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). While

12   common sense suggests that a prisoner incarcerated for a term of ten years would be acutely aware

13   of his pending release, the court will assume, *arguendo*, that Dutra could not have become aware of

14   the alleged breach until some time after the ten year period had formally passed. But by the eleventh

15   year Dutra was obligated to raise his claim or lose it. Dutra, however, did not file his petition with

16   the Superior Court until April 1, 2005, over ten years after his alleged agreement had been breached.

17   Ans. Exh. 5 at 1. Thus, Dutra's breach claim is barred by the statute of limitations.

18        Even if Dutra's breach claim had been raised within the statute of limitations period, it is not

19   supported by the evidence in the record. Dutra's plea colloquy does not reference any special

20   arrangement whereby Dutra was guaranteed release within ten years provided he remained discipline

21   free. See Pet. Mem. Exh. B at 259. Indeed, during his plea colloquy, Dutra expressly acknowledged

22   that his sentence would be fifteen-years-to-life. Id. at 258.

23        Dutra argues that his breach claim is supported by Brown v. Poole, 337 F.3d 1155 (9th Cir.

24   2003). In Brown, the defendant, like Dutra, avoided prosecution for first degree murder by pleading

25   guilty to second degree murder. Id. at 1157. Unlike this case, however, the prosecutor in Brown

26   promised the defendant during the plea colloquy that the defendant would "get out in half the time"

27   if he behaved himself in prison. Id. at 1158. Based on this evidence, the court ordered the

28   prisoner's

1  release. Id. Here, in contrast to Brown, there is no evidence supporting Dutra's breach claim. The

2  Superior Court properly recognized this when it held that Dutra's claim was "not supported by

3  Brown v. Poole" and "lack[ed] evidentiary support." Ans. Exh. 5 at 2. Thus, Dutra's breach claim

4  fails on the merits.

5

6  CONCLUSION

7        For the foregoing reasons the petition for writ of habeas corpus is DENIED.

8

9  IT IS SO ORDERED.

10

11  Date:   April 30, 2008                    _____

12                                             MARILYN HALL PATEL
                                               United States District Court Judge
13                                             Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

16

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>ENDNOTES</u>

1.  Prior to 2002, Dutra's disciplinary record consisted of just two minor violations, one for possession of unissued property and the other for possession of unauthorized property.  <u>See</u> Pet. Ex. B at 269.

2. CCR section 2402(c)(1)(D) may, however, be unconstitutionally vague.  This factor, which asks whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," appears to provide neither notice nor guidance.  There is no objective basis from which to determine whether a murder was "exceptionally callous."  Indeed all murders involve some degree of human suffering.  However, although this factor was cited by the Board, it was not cited by the Superior Court.  As such it is not dispositive to this case and its constitutionality is not before the court.